**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

No. 95-60202
Summary Calendar

---

JOHN M. KING, SR., ET AL.,

Plaintiffs-Appellants,

versus

PROVIDENT LIFE AND ACCIDENT INSURANCE
COMPANY, A TENNESSEE CORPORATION,

Defendant-Appellee,

and

ALCO MANAGEMENT, INC., A TENNESSEE
CORPORATION; MOTEL RESTAURANT, INC.,
A TENNESSEE CORPORATION,

Defendants.

---

Appeal from the United States District Court
for the Southern District of Mississippi
(92-CV-124)

September 21, 1995

---

Before REYNALDO G. GARZA, KING, EMILIO M. GARZA, Circuit Judges.

PER CURIAM:[*]

BACKGROUND

---

[*]Local Rule 47.5 provides: "The publication of opinions that have no precedential value and merely decide particular cases on the basis of well-settled principles of law imposes needless expense on the public and burdens on the legal profession." Pursuant to that Rule, the Court has determined that this opinion should not be published.

John M. King and his family members[1] bring this appeal regarding the adequacy of a conversion health insurance policy under ERISA, COBRA and Tennessee law.[2] King argues that appellee Provident Life and Accident (Provident) failed to provide him adequate notice of the change in conversion health benefits, depriving him of an opportunity to obtain coverage, and is thus obliged to provide him a conversion policy with benefits equal to those under his group policy as an employee. Mr. King was stricken with Lou Gehrig's disease in the summer of 1987 shortly after obtaining group coverage through appellee Provident in March of that year. His employer Motel Restaurant, Inc. terminated him on August 6, 1987 when he was no longer able to perform his work functions. Mr. King has required extensive and expensive care since the onset of his disease. Home health care and alternative treatments were provided under his group coverage as part of this care.

King elected upon termination to continue medical coverage for himself and his family for an additional eighteen months under the

---

[1] Plaintiffs-Appellants will be collectively referred to as King.

[2] Employment Retirement Income Security Act, 29 U.S.C. §§ 1001-1461. COBRA, the Consolidated Omnibus Budget Reconciliation Act of 1985, 29 U.S.C. §§ 1161-1168, is an amendment to ERISA which requires employers to provide continuation of group coverage for a specified duration to employees no longer eligible for group coverage and to provide notice of change in benefits when a former employee is no longer eligible for the continued coverage. A "conversion plan" is a health insurance plan offered to replace continued coverage. 29 U.S.C. § 1162 (5).

group plan pursuant to COBRA.[3] Another provision in his group plan supplied Mr. King with another twelve (12) months of group coverage. The conflict we address covers the period after this last twelve months. Mr. King was eligible only for Provident's conversion plan. This plan provided hospital and surgical benefits solely with limited number of days for hospital stays. Home health care and alternative treatment were not available under the conversion plan.

Unhappy with this choice, Mr. King declined to apply for coverage and instead brought suit in state court seeking an order that Provident provide a conversion plan with benefits equal to those under the original plan (especially home health care). This action was removed to federal court where the district judge held on summary judgment that King's various state-based claims were preempted by ERISA or were without merit.

One issue survived for this second action: whether King had an adequate opportunity to convert from his group plan to a conversion plan.[4] In a lengthy opinion, the district court held again for Provident on summary judgment, this time on the grounds that there was no basis to require Provident to offer a policy with terms

---

[3] See 29 U.S.C § 1162(2)(A)(ii).

[4] The district court in the first action stated that this issue was not properly raised and that the plaintiffs "retain[ed] their right to file another lawsuit on the claim of inadequate opportunity." We reversed when the court in the second action found that res judicata precluded this second action; because of the quoted language above, King maintained his right to bring the inadequate opportunity claim. See King v. Provident, 23 F.3d 926, 928-929 (5th Cir. 1994).

3

equal to those of the group plan.  Additionally, the court held that King had waived his opportunity to obtain the conversion plan offered by failing to apply for it within thirty (30) days.  This appeal followed.


## ANALYSIS

We review grants of summary judgment <u>de novo</u> by evaluating the district court's decision using the same standards that guided the district court.[5]  We will uphold the judgment only as long as there was no genuine issue of material fact raised by the non-movant and the movant was entitled to judgment as a matter of law.[6]  Neither party to this appeal contends that issues of material fact remain to be decided.  King argues that inadequate notice under COBRA of the change in benefits deprived him of an opportunity to obtain coverage and that the conversion policy excluded a preexisting condition in violation of Tennessee law.  In rendering summary judgment for Provident, the district court held that Provident provided adequate notice of the benefits under the conversion plan and that King waived his opportunity to obtain coverage under the conversion plan.  We agree with the district court and affirm its grant of summary judgment for Provident.

The district court found that Provident provided adequate notice under ERISA and COBRA of the change in benefits under the

---

[5] <u>Walker v. Sears, Roebuck & Co.</u>, 853 F.2d 355, 358 (5th Cir. 1988).

[6] Fed.R.Civ.P. 56(c). <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-324 (1986).

4

conversion plan.[7]  King's group plan provided that an insured "may apply for a conversion plan providing <u>hospital and surgical benefits</u>" (emphasis supplied).  The group plan also stated that "the amount of coverage [in the conversion plan] provided will be subject to and determined by the laws of the state [Tennessee] where the Plan is issued"[8] and that "coverage provided will not be identical to the coverage provided under this plan."  Nowhere in the group plan did Provident state that it would provide perpetual coverage at the group plan level.  Rather, Provident stated that its conversion plan would offer hospital and surgical benefits, as was the case.[9]

King argues that the provisions noted above were not specific enough to provide notice of the benefits under the conversion plan.  According to the Kings, Provident waited until the outset of King's

---

[7] COBRA, 29 U.S.C. § 1166(a), requires that notification to covered persons and their spouses of their right to continuing benefits and thereafter their right to convert their group coverage to individual coverage must take place on two occasions -- when group coverage begins and after the onset of a qualifying event such as termination of employment.  King does not contend that the notices were not given, only that they were inadequate.

[8] Tennessee law provides three variations of conversion plans that an insurer may offer to those whose group plans are to terminate.  <u>See</u> Tenn. Code Ann. § 56-7-2318 (a) (1994) (formerly codified at Tenn. Code Ann. § 56-7-1507). None of the three alternatives requires more than hospital and surgical benefits. Under Tenn. Code Ann. § 56-7-2318 (b) and (d), an insurer may provide benefits exceeding those in the alternatives; however, Provident chose not to.

[9] This court sympathizes with King's unhappiness with the conversion plan not providing home health care.  However, we can only speak to what the law commands, not how our sympathy dictates. Neither ERISA, COBRA nor Tennessee law requires a conversion plan equal to an employee's original group plan.

5

illness to set the parameters of his conversion coverage, thereby avoiding continuing responsibility for home care coverage. By not delineating conversion coverage, Provident made a mere promise to provide such coverage. Thus, King believes he is entitled to coverage like that he enjoyed under his group plan. For this proposition, King relies on our holding in Baker v. Washington Nat'l Insurance Corp., 823 F.2d 156, at 158 (5th Cir. 1987), in which this Court upheld a district court finding that, absent any restriction or explanation as to the nature of the coverage to be provided by a conversion policy, the right of conversion had to be construed as the right to continue the basic group coverage in another type of policy.[10]

However, this Court in Baker suggested ways that an insurer could provide notice of the change in benefits and avoid the result reached in that decision, including the following: stating in its insurance contracts the specific level of coverage the conversion policy will provide, attaching a copy of conversion policy to the group policy or referring to a form of conversion policy on file with the employer or state insurance authority. Id. at 159. Provident provided sufficient notice of its conversion policy terms that it need not provide benefits equal to those under the group plan.

As the district court in the case sub judice noted in its Memorandum Opinion and as is shown in the record, the conversion

---

[10] The insurer in Baker promised a conversion policy without describing its terms in any way. Id. at 157.

6

policy expressly limited itself to hospital and surgical benefits. The policy made reference to the Tennessee statute which outlined the minimum coverage that was to be provided in a conversion policy (essentially hospital and surgical benefits). Unlike the insurer in Baker, Provident made no bald promise of conversion. Mr. King's original group policy specifically stated that the conversion policy would provide hospital and surgical benefits and that the conversion policy would provide a different level of coverage than the group plan. The district court properly held that King received sufficient notice of conversion benefits under COBRA and that he is not entitled under Baker to group plan benefits.

This Court also agrees with the district court that King waived his right to Provident's conversion policy by failing to apply for such coverage within the thirty-one (31) days after benefits under the group plan terminated. Aware of his conversion rights, King rejected the individual policy offered by Provident and chose instead to file the first lawsuit. A finding of waiver was appropriate in these circumstances.

Lastly, appellant argues at length that the conversion policy violates a Tennessee statute requiring that "the converted policy . . . not exclude a preexisting condition not excluded by the group policy." Tenn. Code § 56-7-2317 (1994). We find no evidence in the record that Provident intended to deny to coverage for King's disease. On the contrary, an explanation form provided to King on the conversion plan stated that,

> "Unlike most other types of health insurance plans, this
> insurance is provided without regard to conditions of

7

health and provides coverage even for pre-existing conditions (if such conditions were covered under the former group policy) for which the insured may be under treatment at its effective date."[11]

Appellant is dissatisfied with the diminished benefits under the conversion plan for his admittedly grave affliction but couches his dispute as one over coverage for preexisting conditions. As noted above, Provident specifically offered to maintain coverage for preexisting conditions. King's argument is unfounded.

Because Provident satisfied its duty of notice under COBRA and offered a conversion policy in compliance with Tennessee minimum standards, it was entitled to judgment as a matter of law.

AFFIRMED.

_____

[11] See Exhibit B-5 attached to Plaintiff's Cross-Motion for Summary Judgment. R. at 341.